WORCESTER MASONIC CHARITY AND EDUCATIONAL ASSOCIATION *vs.* ASSESSORS OF WORCESTER
(and a companion case between the same parties).

Suffolk. September 25, 1950. — November 3, 1950.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Taxation,* Real estate tax: exemption. *Charity. Corporation,* Charitable corporation. *Words,* "Rent."

A conclusion by the Appellate Tax Board, that a parcel of land and a building thereon were not exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third, because of "a failure of concurrence of ownership and occupancy of the property," was correct where it appeared that the title to the property was held by a Masonic corporation which had been organized to erect and maintain the building for charitable purposes, whose members were chosen by certain unincorporated Masonic lodges of a charitable nature, and which was managed by a board of trustees elected from the membership and having wide powers; that the corporation held the title "primarily for the benefit and use of" the lodges; and that the lodges used and "occupied" the property and paid rent to the corporation therefor: it could not properly be said that the lodges were the real owners as well as the occupants of the property.

APPEALS from decisions of the Appellate Tax Board.

*K. A. Sanderson,* (*D. D. Swain* with him,) for the taxpayer.

*H. P. Grady,* Assistant City Solicitor, (*A. M. Hillman,* City Solicitor, with him,) for the assessors.

WILKINS, J. These are appeals by a taxpayer from a decision of the Appellate Tax Board upholding the board of assessors of Worcester in its refusal to abate taxes assessed for the years 1947 and 1948 upon real estate owned by the taxpayer. The question is whether the real estate,

comprising a three story building and land, falls within G. L. (Ter. Ed.) c. 59, § 5, Third, which exempts "Personal property of literary, benevolent, charitable and scientific institutions and . . . the real estate owned and occupied by them or their officers for the purposes for which they are incorporated . . .."

The appellant association was incorporated under St. 1896, c. 239, "for the purpose of erecting a building in the city of Worcester . . . and maintaining the same for the accommodation and purposes of Masonic apartments, lectures, religious exercises, library, systems of education for the promotion of the arts and sciences, and generally for Masonic and charitable purposes." There are thirty-nine members of the association, three elected by each of thirteen Masonic lodges or organizations. The management of the association is vested in a board of trustees, who are elected from the members and have the care and custody of its property. By the act of incorporation the board of trustees has power to invest, reinvest, and manage all funds, including gifts, devises, and bequests, and to disburse them for the relief of needy or destitute persons, for educational and charitable purposes, for the promotion of its library and art and other collections, and "generally otherwise for the purposes of this act."

On the first floor of the building are a meeting room for the trustees, a reception hall where tobacco and candy are sold, a reading room, a library, a pool room, and a card room. The second and third floors are divided into four or five apartments which are used and occupied by the thirteen lodges. Each lodge is a voluntary association the membership of which is composed exclusively of persons elected and recognized as Masons. The apartments are used mainly for meeting purposes, quarters, and social functions of the lodges. There is a rental charge based upon the membership quota of each organization. The total rent was $22,020 and $21,020 respectively for the fiscal years ending in 1948 and 1949. In the respective years the total income was $29,065.23 and $31,477.40, and the expenditures were $29,-

206.46 and $32,562.56. No income is divided among the members.

The foregoing facts are from the findings of the Appellate Tax Board, which also found that "the activities of these thirteen lodges or organizations are literary, benevolent and charitable in character and tend toward the promotion of moral and benevolent principles and precepts as proclaimed in the Constitution of the Grand Lodge of Masons in Massachusetts" (a matter we need not consider); that "the association held the title to the real estate . . . primarily for the benefit and use of the thirteen organizations and lodges"; and that the "real estate was occupied by said organizations for the purposes for which they were organized." The conclusion of the Appellate Tax Board was that "there is a failure of concurrence of ownership and occupancy of the property by the appellant such as is required to entitle it to the exemption under G. L. (Ter. Ed.) c. 59, § 5, Third."

There was no error of law in the conclusion of the board. The burden of proving the right to an exemption was on the taxpayer. *Boston Chamber of Commerce* v. *Assessors of Boston,* 315 Mass. 712, 716. *Assessors of Lancaster* v. *Perkins School,* 323 Mass. 418, 420. *Fisher School* v. *Assessors of Boston,* 325 Mass. 529, 533–534. The strict requirement of § 5, Third, that the charitable organization must itself be the occupant, as well as the owner, of real estate, is not met by an occupation by other charitable organizations, however laudable their aims and purposes. *St. James Educational Institute* v. *Salem,* 153 Mass. 185, 187. *Assessors of Weston* v. *Trustees of Boston College,* 296 Mass. 399. *Brockton Knights of Columbus Building Association, Inc.* v. *Assessors of Brockton,* 321 Mass. 110, 114. See *Bates* v. *Sharon,* 175 Mass. 293, 295–296. The situation is quite different from that in cases dealing with dormitories provided by educational or other charitable institutions, where the occupation has been said to be that of the corporation itself and not of those to whom lodgings are afforded. *Trustees of Phillips Academy* v. *Andover,* 175 Mass. 118. *Franklin Square House*

v. *Boston*, 188 Mass. 409, 411. *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1. See *Trustees of the Chapel of the Good Shepherd* v. *Boston*, 120 Mass. 212, 214; *Charlesbank Homes* v. *Boston*, 218 Mass. 14, 15. Indeed, the association's argument is from the opposite direction and to the effect that the thirteen organizations are the occupants and owners. It is urged that the association "is nothing more than a legal entity holding in its name the title of thirteen voluntary associations who own and occupy their own property for charitable purposes." This contention cannot prevail. On this record, the thirteen rent paying organizations had no title and did not own the real estate. Rent ordinarily means an amount paid for the use and occupation of premises. *Guild* v. *Sampson*, 232 Mass. 509, 513. *Whiting Paper Co.* v. *Holyoke Water Power Co.* 276 Mass. 542, 547. *Cousbelis* v. *Alexander*, 315 Mass. 729, 731. It must have been in this sense that the word "rent" was used in the findings. Furthermore, the association, of which the board of trustees was given wide general powers by the act of incorporation, is no mere legal entity. Nor is it of consequence that acquisition of the building by the association and occupation of the building by other organizations were contemplated in the act of incorporation. See *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 335–337.

The result is required by our decisions arising under § 5, Third, and consideration of the question of the construction of this statute is not aided by the cases from other jurisdictions cited by the appellant.

*Petitions for abatement dismissed.*