ASSESSORS OF EVERETT *vs.* ALBERT N. PARLIN HOUSE, INC. (and a companion case between the same parties).

Suffolk. March 2, 1954. — April 13, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Taxation,* Real estate tax: exemption; Appellate Tax Board: appeal to Supreme Judicial Court. *Charity. Corporation,* Charitable corporation. *Real Property,* Ownership; Registered land: effect of registration; Foreign fiduciary. *Trust,* Foreign trustee. *Law or Fact. Words,* "Poor."

On the facts, a building maintained by a charitable corporation incorporated for the purpose of providing "a lodging house . . . where . . . poor and worthy young men and boys, who . . . [were] earning their living, . . . [might] be offered a healthy, attractive home in good surroundings to enable them to start right in the world," with such beneficiaries living in the rooms and the control and supervision of the entire premises retained by the corporation, was "occupied" by it for its corporate purposes within G. L. (Ter. Ed.) c. 59, § 5, Third. [362–363]

The ownership of a parcel of Massachusetts land by a charitable corporation to which foreign testamentary trustees had purported to convey the parcel was settled by a decree of the Land Court registering the title thereto in the corporation, irrespective of the authority of the trustees to make such conveyance. [363]

On appeal to this court from a decision by the Appellate Tax Board, the question whether reported evidence warranted a finding by the board was a question of law which, having been raised before the board, was open in this court. [364]

Title to Massachusetts land which had been purchased, pursuant to the terms of the will of one deceased domiciled in New Hampshire, by trustees under the will appointed by a New Hampshire court did not pass to the grantee in a subsequent deed of the land given by the trustees without ancillary administration in Massachusetts or license from a Massachusetts Probate Court. [364–365]

APPEALS from decisions by the Appellate Tax Board.

*Harris E. Albert,* City Solicitor, for the assessors of Everett, submitted a brief.

*Edmund L. Twomey,* for the taxpayer.

RONAN, J.   These are appeals by the board of assessors of Everett from decisions of the Appellate Tax Board granting abatements to Albert N. Parlin House, Inc., of the entire real estate tax assessed to it by the board for the years 1950 and 1951 upon two parcels of real estate.   The tax for 1950 on the larger parcel of land with the buildings amounted to $6,789 and on the other lot of land amounted to $65.70. The tax for 1951 on these lots amounted to $6,448 and $62.40 respectively.

Albert N. Parlin died in 1927, domiciled in New Hampshire.   His will which was admitted to probate in that State bequeathed $300,000 to trustees for the following purposes as set forth in the seventh codicil, article Third: "To purchase or erect and maintain in or near the City of Boston a lodging house, with or without a restaurant at the discretion of my Trustees, where, at a small expense, poor and worthy young men and boys, who are earning their living, may be offered a healthy, attractive home in good surroundings to enable them to start right in the world, and to afford them a congenial place to spend their evenings away from the dangers of the City."   It also provided for a similar home for young women and girls.   The New Hampshire court in accordance with the terms of the will duly appointed as executors and trustees, Messrs. Hemenway, Barnes and Jennings, all residents of this Commonwealth.   The trustees purchased "the property of a Y M C A" and a house lot on Webster and Church streets in Everett. The house was torn down and replaced by a modern brick building and the Y M C A building was remodeled.   The purchase price of the two lots together with the cost of construction of the new building and the remodeling of the old building amounted to $136,000.   The trustees in 1932 caused a corporation to be organized under G. L. (Ter. Ed.) c. 180 for the purpose, as set forth in the charter, "To carry

out the educational, charitable and benevolent purposes"
set forth in article Third of the seventh codicil of the will of
Albert N. Parlin, and that portion of article Third quoted
above was incorporated in the charter. The charter also
stated that the corporation shall not transfer the title or
control of any of its property without the concurrence of
both of the testamentary trustees. Apparently, one of the
trustees had become deceased. The two surviving trustees
in 1932 transferred to the corporation by trustees' deeds
the two lots of land in exchange for all of its shares of stock.
Each deed provided that it was "made without covenants
of any kind express or implied and by virtue of and pursuant
to the power conferred by said will and every other power."
The deeds do not appear in the record although they were
produced at the hearing before the tax board together with
a certificate of title to one of the lots.

The assessors contend that the evidence was insufficient
to show that the property was used for charitable purposes
within G. L. (Ter. Ed.) c. 59, § 5, Third. Real estate owned
and occupied by a benevolent or charitable institution for
the purposes for which it was incorporated, if none of its
income or profits is used except for certain purposes and
none distributed to its officers or stockholders, is entitled to
an exemption from taxation under this statute.

The corporation was chartered as a charitable corporation
and has since been administered in compliance with the
terms of its charter and in accordance with the will of the
testator. The governing principles are well established and
nothing is to be gained by repeating them. They are fully
set forth in *Franklin Square House* v. *Boston*, 188 Mass.
409, 410, *Thornton* v. *Franklin Square House*, 200 Mass. 465,
and *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1, 7. The fact that in some
instances an occupant may be found who might be earning
more than $3,000 a year or has lived at the home for more
than a brief period is not decisive of its right to exemption.
No lack of sound judgment or good faith is shown on the
part of the supervisors of the home in determining the ad-

mission and the length of stay of those who are worthy and poor. *Emerson* v. *Trustees of Milton Academy,* 185 Mass. 414, 415. *Assessors of Boston* v. *Lamson,* 316 Mass. 166, 173–174. The will did not indicate that an occupant should not stay beyond any definite period of time. The testator intended that his stay should be long enough to aid him in getting a proper start in life, a matter which obviously might not in many instances be accomplished within a short period of time. The testator also intended that when his financial condition so improved that he could not reasonably be considered to be poor he should leave and give his place in the home to another. The word "poor" is not readily susceptible of exact definition. There may be reasonable differences of opinion in some cases. One may still be said to be poor, even if his wages may be higher than the rate prevailing a decade ago, in view of present economic conditions which may well be considered in determining his eligibility to become or continue as a lodger at the home. *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 291. *Ohio Bell Telephone Co.* v. *Public Utilities Commission of Ohio,* 301 U. S. 292, 301. We perceive no deviation from the terms of the purposes of the home. *New England Sanitarium* v. *Stoneham,* 205 Mass. 335, 343. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1, 7–8. *Assessors of Lancaster* v. *Perkins School,* 323 Mass. 418, 422.

The premises are actually used and occupied by the corporation in maintaining them as a home for the beneficiaries described in its charter and the testator's will. Each roomer has a key to the front door, and also a key to his room which is seldom used as the rooms are customarily left open. The immediate control and the supervision of all parts of the premises are retained by the corporation. The relation of a roomer to the corporation is similar to that existing between a lodger and the keeper of the lodging house. *White* v. *Maynard,* 111 Mass. 250, 255. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1, 5. It has been held that an educational institution has the

legal possession of entire dormitories for the students and dwellings for the faculty and is in actual occupation thereof and of every room therein within the meaning of a tax exemption statute requiring occupancy by the institution itself. *Trustees of Phillips Academy* v. *Andover,* 175 Mass. 118. *President & Fellows of Harvard College* v. *Assessors of Cambridge,* 175 Mass. 145. *Trustees of Amherst College* v. *Assessors of Amherst,* 193 Mass. 168. That is the situation here.

The final contention of the assessors is that the corporation does not own the property. To be entitled to an exemption the charitable institution must not only occupy the premises but it must be the owner. *Assessors of Weston* v. *Trustees of Boston College,* 296 Mass. 399. *Worcester Masonic Charity & Educational Association* v. *Assessors of Worcester,* 326 Mass. 409. The deeds to the trustees of the property are not in the record. It is not contended that they did not acquire a good title to the land. The contention now made is that the authority of the trustees did not extend beyond the territorial jurisdiction of the New Hampshire court and therefore the corporation did not acquire any title whatever. The testamentary trustees filed on March 28, 1933, a petition under G. L. (Ter. Ed.) c. 203, § 17A, in the Probate Court for Middlesex County to convey the land to the corporation, but nothing further was done under the petition. The testator's will was not set up here. No ancillary administration was taken out, and so far as appears no license to convey was ever granted here to the trustees. But the ownership of the large parcel of land by the corporation was settled in 1948 when it received a certificate of title from the Land Court of this Commonwealth to the effect that the corporation was the owner in fee simple of this parcel of land. The inference is plain from the tax bills that this was the lot upon which the buildings were located, for the assessment on the other lot is solely upon a small area of land. Moreover, the evidence shows the registration of title was upon the large parcel with the buildings. The decree of the Land Court so far as now

material "shall be conclusive upon and against all persons."
G. L. (Ter. Ed.) c. 185, § 45. No change in the condition of
that title has been suggested. There was no error in the
decision of the board granting abatements of the full amount
of the taxes assessed upon the registered parcel.

The question remains as to the ownership of the small
parcel. The tax was properly assessed to the corporation
because it held the record title. G. L. (Ter. Ed.) c. 59, § 11,
as appearing in St. 1939, c. 175. See *Boston* v. *Quincy Market
Cold Storage & Warehouse Co.* 312 Mass. 638; *Assessors of
Boston* v. *John Hancock Mutual Life Ins. Co.* 323 Mass. 242.
The issue here is not the legality of the assessment but the
right to an abatement. The assessment of all property
within the Commonwealth is the rule and an exemption is
the exception. *Animal Rescue League of Boston* v. *Assessors
of Bourne,* 310 Mass. 330. *Assessors of Boston* v. *Boston
Pilots' Relief Society,* 311 Mass. 232. Besides, an exemption
is an act of grace of the sovereign power, and "the burden
of proof is upon the one claiming an exemption from taxation
to show clearly and unequivocally that he comes within the
terms of the exemption." *Boston Symphony Orchestra, Inc.* v.
*Assessors of Boston,* 294 Mass. 248, 257. *Assessors of
Framingham* v. *First Parish in Framingham,* 329 Mass. 212,
215.

The assessors contend that the evidence did not justify
the Appellate Tax Board in concluding that the corporation
owned this parcel of land. This raises a question of law
which was appropriately raised before the board, *Choate* v.
*Assessors of Boston,* 304 Mass. 298; *Assessors of Lancaster* v.
*Perkins School,* 323 Mass. 418, and is properly presented
here by a report of all the evidence necessary for consider-
ation by us. G. L. (Ter. Ed.) c. 58A, § 13, as appearing in
St. 1933, c. 321, § 7, as amended. *Fisher School* v. *Assessors
of Boston,* 325 Mass. 529. The contention of the assessors,
as already pointed out, is that testamentary trustees ap-
pointed in another State under the will of a testator who
was domiciled there had no power to convey a parcel of land
located in this Commonwealth without being authorized by

the Probate Court here. The general rule is that, except where permitted by a statute of the State where the land is located, a foreign trustee has no authority to convey land in another State. See *Holmes* v. *Dunning,* 260 Mass. 250, 253; Am. Law of Property, § 13.6; 81 A. L. R. 660; 1 Powell on Real Property, 595–597; Restatement: Conflict of Laws, § 216; Beale, Conflict of Laws, §§ 487.1, 491.1. Whatever hardships arose at common law in this respect have been greatly softened in various jurisdictions, including our own, where statutes have been enacted affording ready means for foreign fiduciaries to secure authority to convey or encumber lands located here. See G. L. (Ter. Ed.) c. 201, § 30; c. 202, §§ 32, 33; and c. 203, § 17A. Foreign executors and administrators, when the question is properly raised, are not recognized as having authority to maintain an action in our courts for the death of one who was domiciled in another State, *Brown* v. *Boston & Maine Railroad,* 283 Mass. 192, *Boudreau* v. *New England Transportation Co.* 315 Mass. 423, *Boutillier* v. *Wesinger,* 322 Mass. 495; and the same rule applies to foreign receivers. Beale, Conflict of Laws, § 549.1.

Here the testamentary trustees never obtained any license to convey the small parcel to the corporation. Without more appearing on this record we are not prepared to say that a different rule should apply where, as here, the parcel was not owned by the testator but was purchased by the trustees in the administration of the trust. In our opinion the corporation has failed to sustain the burden of proving the ownership of this parcel and consequently there was error in granting an abatement of the tax on this lot.

*Abatement of the 1950 tax granted in the amount of $6,789 with costs.*

*Abatement of the 1951 tax granted in the amount of $6,448 with costs.*